FIRST STATE BANK v. CHARLES L. LINCOLN, TRUSTEE IN
BANKRUPTCY.

[53 South. 387.]

1. CHANCERY PLEADINGS AND PRACTICE. *Jury trial. Code* 1906, § 558.
*Discretionary with court.*

Under Code 1906, § 558, providing for jury trials in chancery courts,
a trial by jury is not a matter of right and is allowed only in the
discretion of the court.

2. EQUITY. *Bankruptcy. Preferences. Suit to vacate. State courts.
Rules of practice.*

Bankruptcy Act July 1, 1898, ch. 541, § 60b, 30 Stat. 562 (U. S.
Comp. St. 1901, p. 3445), and section 70e as amended by Act
Feb. 5, 1903, ch. 487, § 16, 32 Stat. 800 (U. S. Comp. St. Supp.
1909 p. 1316), providing that suits to recover preferences may
be brought in any court of bankruptcy, and also in any state
court which would have had jurisdiction if bankruptcy had not
intervened, do not alter, modify, or repeal the rules of practice
by which courts of the state are regulated; and hence, in a suit
in equity in a state court to recover a preference, defendant was
not entitled to have issues framed and sent to a jury.

FROM the chancery court of Lowndes county.

HON. JAMES F. MCCOOL, Chancellor.

Lincoln, trustee in bankruptcy of the bankrupt Columbus
Chair Company, appellee, was complainant in the court below;
and the First State Bank of Columbus, a domestic banking cor-
poration, appellant, was defendant there. The suit was for
recovery of a preference. From a decree in favor of complain-
ant the defendant appealed to the supreme court. The opinion
of the court states the facts of the case.

*William Baldwin,* for appellant.

The First State Bank was entitled under the law to have sub-

mitted to a jury the questions of fact upon which it is contended that liability arose as to the other creditors of the bankrupt. There can be no liability of the bank to the other creditors, if either of these two propositions are not established: First, whether the chair company was insolvent at the time these payments were made to the bank; and, second, whether the receiving bank had any reasonable ground to believe that a preference was intended.

Unless both of these propositions were established by the trustee in bankruptcy for the creditors, there was certainly no chance for any liability to arise on the part of the bank for receiving payments on its debt, which debt was the largest, the oldest, and the most meritorious of all the debts of the bankrupt company. The request was earnestly pressed upon the chancellor to submit these questions of fact to a jury. The chancellor refused such request.

Whether or not the creditors had reasonable cause to believe the debtor insolvent, is a question of fact for the jury; and when the evidence justifies a submission of the question, the finding of the jury is not reviewable. Collier on Bankruptcy (6th. ed.), 486, citing *Hackney v. Raymond,* 10 Am. B. R. 213; *Landry v. First National Bank,* 11 Am. B. R. 223; *Deland v. Miller & Cheny Bank,* 11 Am. B. R. 744.

The right of trial by jury is the most valuable right of the citizen. It is established and maintained as the great foundation stone of our legal institutions, and its removal means the speedy extinction of such institutions.

Congress in the enactment of the bankruptcy act dared not to trench upon the sacred right of trial by jury; but clearly and unequivocally provided for the maintenance of this right.

It is not contended that, when a controversy arises in a court of the United States, being a bankruptcy court sitting in equity and trying a question arising in the bankruptcy proceedings, a

97 Miss.—46

right of trial by jury exists. We make no such contention. By section 2 of the bankruptcy act, courts of the United States, sitting as bankruptcy courts, and trying matters and proceedings in bankruptcy, are made courts of equity, and may try all questions in their own way without resort to a jury. The case of *Barton v. Barbour,* 104 U. S. 126, is clear as to this proposition.

In *Scot v. Neely,* 140 U. S. 109, the supreme court of the United States put its condemnation upon the provision of the law of Mississippi which permitted a judgment creditor, who had not settled the question of fact by obtaining a judgment against his debtor, to go into a court of equity and subject the property of the debtor alleged to have been fraudulently conveyed. That appellate court, through Mr. Justice Fuller, held that it was in the teeth of the seventh amendment to the federal constitution granting the right of trial by jury on questions of fact. And the later case of *Cates v. Allen,* 149 U. S. 459, Mr. Chief Justice Fuller emphasized that proposition, saying: "And as the ascertainment of the plaintiff's demand is by action at law, the fact that the chancery court has the power to summon a jury on occasions cannot be regarded as the equivalent of the right of trial by jury secured by the seventh amendment of the constitution." Accordingly, it is plain and unequivocally settled by the holding of the supreme court of the United States, that unless the right of trial by jury be allowed to this defendant bank, as a matter of right, upon the plain, clear-cut issue of fact, the holding to the contrary is in direct violation of the seventh amendment to the constitution of the United States, securing the right of trial by jury.

*D. W. Houston,* on the same side.

The burden of showing insolvency is on him who alleges it. The debtor must have been insolvent at the time that the pay-

ments or alleged payments were made. If the filing of the petition or the levy following the judgment causes insolvency, it is not enough. And insolvency must be alleged and proved and found, as a fact. Mere belief is not enough; nor is danger of insolvency, as a coming result. Under, and in contemplation of the bankruptcy act, a debtor is insolvent when the aggregate of his property, exclusive of that which he may have transferred, concealed or removed, or permitted to be transferred, concealed or removed, with intent to defraud, hinder or delay creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts. Collier on Bankruptcy (6th ed.), 476.

*Betts & Sturdivant,* for appellee.

This suit was brought in the chancery court of Lowndes county, Mississippi, which has concurrent jurisdiction with the federal courts in all actions by trustees in bankruptcy to recover preferences. Section 23 of the bankruptcy act; *Chism v. Citizens Bank,* 27 South. 637; *Thompson v. First National Bank,* 36 South. 799; *Belknap v. Lyell,* 42 South. 799.

The adjudication of bankruptcy of the chair company fixes the status of the chair company as being insolvent on July 21, 1905, the date of the filing of the petition, and all stockholders, officers, etc., of the company are bound by this. Weaver, the president of the chair company, can not now be heard to contend that the chair company was not insolvent. Collier on Bankruptcy (7th ed.), 351; *Silvey v. Tifts,* 17 Am. B. R. 9.

This case is one of equitable cognizance. *Thompson v. First National Bank,* 84 Miss. 54; Collier on Bankruptcy (6th ed.), 489. This jurisdiction was not even challenged by demurrer, and the case then stood just like any other case in the chancery court, and should be governed by the rules of chancery. *Stein v. Myers,* 91 N. Y. S. 292.

The revised statutes of the United States provide that suits

in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law.    U. S. Const. Rev. Stat. 1901, 583. Hence, as a plain and adequate and complete remedy may be had in a court of chancery, the rules of chancery practice are here applicable.    There is no statute law which, in a case like this, makes it imperative for the chancery court to leave it to a jury to pass upon controverted questions of fact.

The cases cited by learned counsel for appellant are not applicable.    See *Caradine v. Caradine,* 58 Miss. 294; *Pittman v. Lamb,* 53 Miss. 594.

Argued orally by *William Baldwin,* for appellant, and by *J. I. Sturdivant,* for appellee.

Mayes, C. J., delivered the opinion of the court.

On the 21st day of July, 1905, certain creditors of the Columbus Chair Company filed a petition in the bankrupt court seeking to have the chair company adjudged a bankrupt.    On the 13th day of August following the adjudication was made, and on the 30th day of the same month the creditors elected C. L. Lincoln trustee.    After the selection of Lincoln as trustee, and while acting as such, Lincoln filed a bill in the chancery court of Lowndes county, in which it is alleged that the First State Bank had received from the chair company, within four months before the filing of the petition, preferences amounting to several thousand dollars.    The bill charges that, at the time of the receipt of the alleged preferences by the bank, the chair company was insolvent and its condition was known to the bank, and that the payments were made for the purpose of hindering, delaying, and defrauding other creditors, and of preferring the bank, and that the bank knew, or had reasonable cause to know that it was the intention of the chair company to give it preference over

other creditors. The bill further charges that since the adjudi-
cation in bankruptcy all the the property belonging to the chair
company has been sold and applied to certain debts of creditors
holding liens thereon, and there still remains $14,000 due gen-
eral creditors, which has been approved and allowed in the bank-
ruptcy court; but they cannot realize anything on their debts
unless the State Bank is required to pay back such sums as it
received as stated above. The petition concludes with the
prayer that the bank be required to account for the amount of
money transferred to it by the chair company while insolvent
and within four months prior to the filing of the petition, and
that on final hearing the bank be required to pay to the trustee
all said money received by it. It will be seen from the above
that a part of the relief sought by the bill is to require the bank
to account and disclose to the trustee what amount it had re-
ceived during the four months. The bank filed an answer in
denial of all the material allegations contained in complainant's
bill, denying the insolvency of the chair company at the time
it received any money from it, and denying that it was the in-
tention of the chair company to prefer it, or that it knew or
had reason to believe such was the purpose on the part of the
chair company.

A great deal of testimony is to be found in the record on
both sides of this controversy, but at the conclusion the chancel-
lor entered a decree against the bank for $2,743.78, with in-
terest from June 6, 1906, the date of the bill, and also taxed
the bank with the costs. It conclusively appears that the net
amount received by the bank and applied on a debt owing it by
the chair company, within the four months, was $2,743.78.
The facts warranted the chancellor in rendering this decree,
and we cannot disturb his findings, unless it is manifest error;
and this we cannot say.

An opinion in the case would be unnecessary, were it not for

the fact that counsel for appellant so earnestly insist that they have a right to have a jury pass on certain questions which will be stated. It appears that after the answer was filed, and the cause came on for trial, appellant moved the court to submit to a jury: (1) Whether or not, at the time of the receipt of the money by it from the chair company and the application of same to the debt of the chair company with the bank, the chair company was insolvent; and (2) whether or not, at the time of the receipt of the money by the bank, it knew or had reasonable cause to believe, that the chair company was insolvent. The above motion was overruled, and a jury denied, and the chancellor proceeded to try the cause, sitting as trier of both fact and law, as in all other chancery suits. It is insisted that the right of trial by jury on these propositions was a right which the bank could insist upon, and which the court could not deny.

In determining this question it will be well to notice, first, the law of the state in regard to when a jury may be awarded in a trial in the chancery court. Section 558 of the Code of 1906 provides that: "The chancery court, in a controversy pending before it, and necessary and proper to be tried by a jury, shall cause the issue to be made up in writing," etc. This section of the Code is a practical rescript of the statutes on the same subject in Ann. Code 1892, § 507, and Rev. Code 1880, § 1836, and differing from Rev. Code 1871, § 1032, only in phraseology, and not in substance. In the case of *Pittman v. Lamb,* 53 Miss. 594, and *Carradine v. Carradine,* 58 Miss. 293, 38 Am. Rep. 324, this court has expressly held that the granting or refusing of a jury by the chancellor was discretionary, and the law announced in those cases, although decided under the Code of 1871, is as applicable to jury trials under section 558 of the Code of 1906 as it was under section 1032 of the Code of 1871. The statute merely gives authority to the chancery court to summon a jury in a case deemed by it to be necessary and proper

to be tried by a jury, but leaving the court to determine in what case it shall deem a jury trial "necessary and proper." It is not a matter of right to be demanded by a litigant. The bill made out a case of equitable jurisdiction pure and simple. It asked for an accounting—a subject of well-recognized equitable jurisdiction.

Unless the bankruptcy law compels the state court to submit the questions propounded by appellant to the determination of a jury, it is clear that it was not necessary under the state law. Let us examine the federal law on this subject. Under the provisions of section 60b of the bankruptcy law (Act July 1, 1898, ch. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]) and section 70e, as amended by Act Feb. 5, 1903, ch. 487, § 16, 32 Stat. 800 (U. S. Comp. St. Supp. 1909, p. 1316), it is provided that suits for the recovery of a preference may be brought "in any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened," each having concurrent jurisdiction. When the bankruptcy law conferred upon the state courts concurrent jurisdiction with the bankruptcy courts in suits by trustees to recover preferences, it did not repeal, alter, or modify the rules of practice by which the courts of the state are regulated and controlled, but left the states to the practice and procedure by which they were governed in the settlement of any and all controversies within their jurisdiction. A suit by a trustee to recover a preference is not in any sense a "proceeding in bankruptcy." It is merely a suit to recover from the preferred creditor what such creditor has acquired under circumstances prohibited by the bankruptcy law. Loveland on Bankruptcy (3d ed.), p. 618, § 203a. The United States courts have regulated the procedure to be followed in this character of cases, where the suit is instituted in the bankruptcy court; but the declaration of the federal courts on this subject is only intended to apply to suits in such courts, and has no bearing on the procedure

of the state courts, if the trustee brings the suit there.    In so doing the federal courts are but following the statutes of the United States prescribing what shall be the practice there.    The Revised Statutes of the United States (U. S. Comp. St. 1901, p. 583) provide that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law," and the bankruptcy courts have steadily refused to entertain suits by trustees to recover preferences on the equity side of the court, unless the conditions prescribed by the statute constituting the right to go into the equity court existed.

But, even if this law applied to the state court, which we say does not, it would not apply here, for the reason that this suit requires an accounting, a jurisdiction which is peculiarly one of equitable cognizance.    In section 203*a*, Loveland on Bankruptcy, it is said that a suit "to recover property conveyed by the bankrupt in fraud of the act, either as a preference or a fraudulent conveyance, is not a proceeding in bankruptcy.    For this purpose there must be a plenary suit at law or in equity, according to the nature of the case.    Such suits may be actions at law in ejectment, trover, assumpsit, etc., or suits in equity, as a bill to set aside a fraudulent conveyance, etc.    What kind of a suit will lie to recover property for the estate of a bankrupt depends upon the law governing the practice in the particular court in which the suit is brought."    Again, in Collier on Bankruptcy (7th ed.), p. 674, par. 6, it is said that "the practice in such suit is regulated by the rules applicable to the court in which they are brought."

Cases cited by counsel for appellant, in seeming conflict with the court's holding in this case, have no application here for the reason that they are cases from federal courts declaratory of their own practice.    The cases of *Scott v. Neely,* 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, and *Cates v. Allen,* 149 U. S.

451, 13 Sup. Ct. 883, 977, 37 L. Ed. 804, merely hold that, where a suit is instituted in a federal court for the purpose of enforcing a right created under the statutes of a state, the mode of its enforcement by the federal court will be in accordance with the procedure by which the federal court is regulated, rather than that of the state, where there is inconsistency between the procedure of the two courts. The court observes as follows: "The state legislatures certainly have no authority to prescribe the forms and modes of proceeding in the courts of the United States; but having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding, no reason exists why it should not be pursued in the same form as in the state courts." But the courts of the United States have no more attempted to control the procedure in the state courts, where the suit is instituted in the state court, than they have submitted to the procedure when inconsistent with the federal procedure. In all cases, the constitutional validity of the state's procedure in any particular case has up to this time been left for the state courts to settle.

We do not deem it necessary to discuss the questions raised on cross-appeal. It is our judgment that the decree of the chancellor is correct on both direct and cross appeal, and it is affirmed as to both.               *Affirmed.*